IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| APACHE CORPORATION, | § | |
| | § | |
| Plaintiff | § | |
| v. | § | Civil Action: _____ |
| | § | |
| JOHN CHEVEDDEN | § | |
| | § | |
| Defendant. | § | |

Plaintiff's Original Complaint

Plaintiff Apache Corporation ("Apache") files this complaint for declaratory judgment against defendant John Chevedden ("Chevedden").

I.

Parties

1.      Plaintiff Apache is a Delaware corporation, with its principal office and principal place of business in Houston, Texas.

2.      Defendant Chevedden is an individual residing in Redondo Beach, California and may be served with process and a copy of this complaint at 2215 Nelson Avenue, No. 205, Redondo Beach, CA 90278.

II.

Jurisdiction and Venue

3.      This Court has federal question jurisdiction over this matter under 28 U.S.C. § 1331, and has diversity jurisdiction over this matter under 28 U.S.C. § 1332.  This Court also has jurisdiction over this matter under § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa because the act or transaction about which defendant has complained may be enforced in this district, and because Chevedden has transacted business in this district with respect to the

matters at issue in this lawsuit.

4.      There is an actual controversy between Apache and Chevedden.  Chevedden has requested the inclusion of a proposal in Apache's proxy statement for its annual meeting of stockholders even though he has failed to provide the required proof of ownership that would entitle him to include a proposal in Apache's proxy materials.  This action involves amounts in excess of the minimum jurisdictional requirements of this Court.

5.      Personal jurisdiction and venue are proper in this district because Chevedden directly and intentionally has transacted business in this district that goes to the heart of the matters at issue here.  Defendant sent Apache a letter in this district seeking to influence how Apache conducts business under the guise of a "simple majority vote" proposal in Apache's proxy materials, and for consideration at Apache's next annual shareholder meeting in May 2012, which will be held in this district.  Chevedden has sought to influence the manner in which Apache conducts its business in this district, even though he has failed to demonstrate that he is a record holder of Apache stock.  A substantial part of the events giving rise to, and at issue in, this lawsuit occurred in this district.

III.

Facts

6.      On November 30, 2011, Chevedden submitted a proposal for inclusion in Apache's upcoming proxy statement purportedly in reliance on Rule 14a-8 under the Securities Exchange Act of 1934, 17 CFR 240.14a-8.  In his November 30, 2011 cover letter attaching the proposal, Chevedden says "This proposal is submitted for the next annual shareholder meeting," which is scheduled for May 2012 in Houston, Texas.  Chevedden's proposal requests that Apache "take the steps necessary so that each shareholder voting requirement in our charter and

bylaws that calls for a greater than simple majority vote be changed to require a majority of the votes cast for and against the proposal in compliance with applicable laws."

7.      Contemporaneous with the filing of this Complaint, Apache has informed the Securities and Exchange Commission's Division of Corporation Finance (the "SEC staff") that Apache intends to exclude the proposal pursuant to Rule 14a- 8(b) and Rule 14a-8(f)(1) because Chevedden failed to provide the required proof of stock ownership in response to the Company's proper request for that information, and because of binding precedent from this federal district court.

8.      According to official SEC records, Chevedden appears to be the single most persistent proponent or proxy of purported shareholder proposals in history.  Since December 9, 1994 when Chevedden submitted his first proposal, proposals for which Chevedden has been proponent or proxy have been the subject of over 1,000 SEC staff no-action letters, eclipsing the next most frequently mentioned shareholder proponent, the AFL-CIO Reserve Funds.

9.      In the past ten proxy seasons, Chevedden has proposed or been a subject of over 13.3% (1019 out of 7651) of all proposals considered by the SEC staff in no-action letters.  Even that stunning ten year percentage is low compared to recent years: over 20.4% (137 out of 672) of all SEC staff no-action letters in the 2011 proxy season, over 22.2% (196 out of 884) of all SEC staff no-action letters in the 2010 proxy season, over 17.8% (148 out of 831) of all no-action letters in the 2009 proxy season, and over 13.8% (102 out of 737) of all no-action letters in the 2008 proxy season.

<u>Chevedden's Proposal Improperly Omits Proof of Stock Ownership</u>

10.      In his November 30, 2011 cover letter to his proposal, Chevedden says that "Rule 14a-8 requirements will be met including continuous ownership of the required stock value until

after the date of the respective shareholder meeting and presentation of the proposal at the annual meeting." Chevedden did not include the proof of his ownership of Apache stock as required by Rule 14a-8. Rather, Chevedden attached to his November 30 letter and proposal a letter also dated November 30, 2011 from RAM Trust Services ("RTS"), which stated that Chevedden was a client of RTS and that he owned no fewer than 50 shares of Apache stock and has held them continuously since November 7, 2008 (the "RTS Letter"). The letter also indicated that RTS acted as his custodian for these shares and that Northern Trust Company, a direct participant in the Depository Trust Company, acted as a master custodian for RTS.

11.     The November 30 letter from RTS enclosed a November 30 letter from Northern Trust that, in its entirety, states "The Northern Trust Company is the custodian for Ram Trust Services. As of November 29, 2011, Ram Trust Services held 163 shares of Apache Corp. Company CUSIP # 037411105. The above account has continuously held at least 50 shares of APA common stock since at least November 7, 2008."

12.     In its November 30 letter, RTS invited Apache to contact the signatory of the RTS letter if RTS could "be of further assistance, or if you should require additional documentation related to Mr. Chevedden's proposal."

13.     Upon receipt of Chevedden's purported proof of ownership, Apache reviewed its list of record owners of Apache stock to determine whether either Chevedden or RTS actually was a record holder of Apache stock who even arguably could be eligible to submit a proposal for inclusion in Apache's proxy statement. Neither Chevedden, nor RTS is listed in Apache's stock records as a record holder of Apache common stock.

Apache's Information Request to RTS

14.     On December 6, 2011, Apache sent a letter to RTS that noted Apache's serious concerns regarding RTS's November 30 letter, accepted RTS's invitation to contact it for "additional documentation related to Mr. Chevedden's proposal," and requested additional documentation (e.g., monthly, quarterly or annual account statements) from RTS documenting Chevedden and RTS's ownership of Apache stock continuously since November 2008.  The request also asked for communications by and among RTS, Northern Trust and Chevedden concerning Apache or its shares as well as any beneficial ownership reports filed by Ram Trust Co., Ram Trust Services, or Atlantic Financial Services with the SEC.  Noting that it has been documented that Chevedden has completed proof of ownership letters purportedly sent on behalf of his brokers, Apache asked whether RTS has provided Chevedden with letters containing blank spaces to be filled in concerning Chevedden's purported ownership of securities in Apache or any other public company with securities registered under Section 12 or 15(d) of the Exchange Act.

15.     RTS responded to Apache's request on December 9, 2011, and simply stated:

Thank you for your letter dated December 6, 2011. We believe that the issue is whether there is a defect in the letters dated November 30, 2011 from ourselves to John Chevedden and from Northern Trust to John Chevedden. Please advise whether there is any defect in these submissions.

16.     RTS did not provide any of the "additional documentation related to Mr. Chevedden's proposal" that RTS had invited Apache to request.

17.     On December 22, 2011, in response to RTS's December 9 letter, Apache again requested that RTS provide the "additional documentation related to Mr. Chevedden's proposal" that RTS's November 30, 2011 letter invited Apache to request and explained that

In its November 30 letter, RTS stated that if additional documentation to establish proof of ownership for the proposal in question was needed, we should ask you for it. We did just that. Yet RTS's reply provided no answers to any of our questions and provided no documents.

We asked for some pretty basic information that ought to be easy for RTS to produce (assuming the required ownership exists), so RTS's refusal to provide this information-which RTS itself offered-appears to reinforce the deficiency of the response to our proof of ownership request. We would like to give RTS this opportunity to reconsider.

18.     Neither RTS nor Chevedden responded to this request.

<u>Apache's Deficiency Notice to Chevedden</u>

19.     Under the recently published Staff Legal Bulletin No. 14F ("SLB 14F"), only DTC participants should be viewed as "record" holders of securities that are deposited with DTC. SLB 14F indicates that a stockholder that owns shares through a bank or broker that is not a DTC participant must obtain and submit two statements regarding the stockholder's ownership—one from the stockholder's bank or broker confirming the stockholder's ownership, and one from the DTC participant through which the securities are held confirming the ownership of the stockholder's bank or broker. Based on a comparison of SLB 14F and publicly available information regarding RTS, Apache concluded that RTS's November 30 letter did not comply with the guidance provided by SLB 14F.

20.     Accordingly, on December 9, 2011, Apache sent Chevedden a letter informing him that he had failed to comply with the procedural requirements of Rule 14a-8 and SLB 14F and explained how he could cure the procedural deficiency (the "Deficiency Notice"). In pertinent part, the Deficiency Notice stated:

The provision of [the letters from RTS and Northern Trust] does not satisfy the requirements of SLB 14F because the letter from RTS was not provided by a bank or broker under prevailing law. In the letter, RTS states that you are a client of RTS, and that it serves as a custodian for Apache's shares. RTS is not a broker; it is an investment advisor, and therefore, is barred from serving as a broker or

custodian. In *Apache Corp. v Chevedden*, 696 F.Supp 2d 723 (S.D. Tex. 2010), the court analyzed Apache's claim that RTS is not a broker and found that "Apache is correct that RTS does not appear on the SEC's list of registered broker-dealers, on the FINRA membership list, or on the SIPC membership list." Further, the court stated that, "RTS is not a participant in the DTC. It is not a registered broker with the SEC, or the self-regulating industry organizations FINRA and SIPC." Based on the court's ruling, we have reviewed the database of registered broker dealers maintained by FINRA, as well as the list of DTC participants available at http://www.dtcc.com/downloadsimembershipidirectories/ dtcialpha.pdf. As was the case in the KBR litigation, RAM Trust Services is not listed as a registered broker dealer or as a DTC participant.

While you have provided a letter from DTC participant, Northern Trust, you have failed to provide a letter from a bank or broker. Therefore, until you provide a letter from a bank or broker, you have failed to provide adequate proof of ownership. As required by Rule 14a-8(f), you must provide us with proper proof of ownership as set forth in SLB 14F within 14 days of your receipt of this letter. We have attached to this notice of defect copies of Rule 14a-8 and SLB 14F for your convenience.

21.    RTS responded to the Deficiency Notice purportedly on Chevedden's behalf on

December 13, 2011. In that response, RTS stated that

Please be advised that Ram Trust Services is not an "investment advisor", as you suggest. Rather it is a non-depository trust company organized in 1997 under Maine Revised Statutes Title 9-8: Financial Institutions, and regulated as such by the Maine Bureau of Financial Institutions.

Ram Trust Services is, therefore, a "bank" within the meaning of Section 202(2)(iii) of the Investment Advisers Act of 1940 and Section 3(a)(6) of the Securities Exchange Act of 1934: "any other banking institution, savings association or trust company, whether incorporated or not, doing business under the laws of any State or of the United States, a substantial portion of the business of which consists of receiving deposits or exercising fiduciary powers similar to those permitted to national banks under the authority of the Comptroller of the Currency ... and which is supervised and examined by State or Federal authority having supervision over banks and which is not operated for the purpose of evading the provisions of this title ..."

22.    Chevedden himself has not responded to Apache's December 9, 2011 deficiency

notice, has not cured the defect, has not provided the required letters or other written

confirmation from a bank or broker confirming his purported ownership of Apache stock, and

has not withdrawn his purported shareholder proposal to Apache.

## The Proposal May Be Excluded Under Rule 14a-8(b) and (f)(1)
## Because RTS Is Not a Bank or Broker

23.     Chevedden has failed to provide Apache, within the time period set forth in Rule 14a-8(f)(l), the requisite verification that Chevedden satisfies the eligibility requirements of Rule 14a-8(b).  Rule 14a-8(b) provides that in order to be eligible to submit the proposal, Chevedden must have continuously held at least $2,000 in market value, or 1% of the company's securities entitled to be voted on the proposal at the meeting for at least one year by the date on which the proposal is submitted.  Rule 14a-8(b)(2) provides that Chevedden, who is not a registered holder of Apache's securities, must prove his eligibility at the time of his submission in one of two ways: he must submit a written statement from the "record" holder of his securities (usually a broker or bank) verifying that, at the time he submitted the proposal, he continuously held the securities for at least one year, or he must submit copies of Schedules 13D or 13G or a Form 3, 4 or 5.

24.     SLB 14F interprets Rule 14a-8 to require two written statements in circumstances where a stockholder holds shares through a bank or broker that is not the record holder of the shares at issue:  one from the bank or broker through which the stockholder owns shares, and a second from the DTC participant through which a stockholder's bank or broker holds shares.  Chevedden has provided only one of these two required statements – the letter from a DTC participant.  Because RTS is neither a broker nor a bank as is explicitly required by SLB 14F, Chevedden has failed to provide one of the required forms of proof of ownership – a letter from a bank or broker verifying his ownership.

25.     To determine whether RTS is a registered broker dealer, Apache conducted a search for "Ram Trust Services" on the FINRA website.  This search indicated that no entity

identified as Ram Trust Services is a registered broker dealer. To be comprehensive, Apache also conducted a search for "Ram Trust" on the FINRA website, which produced a result identifying "Ram Trust Brokers, Inc." as a registered entity. The FINRA entry included a link to Atlantic Financial Services, which is a subsidiary of RTS. The FINRA report also indicates that "Atlantic Financial Services of Maine, Inc. is the wholly owned subsidiary of Ram Trust Services." We also conducted a search of the database of broker dealers maintained by SIPC. This search did not result in the identification of any entities included in that database under the name "Ram Trust" or "Ram Trust Services." Based on this information, as originally indicated to Chevedden, RTS is not a registered broker dealer.

26.     In its December 13 response to the Deficiency Notice, RTS claims that RTS is a "non-depository trust company organized in 1997 under Maine Revised Statutes Title 9-8: Financial Institutions, and regulated as such by the Maine Bureau of Financial Institutions." A similar claim is made on RTS's website that "Ram Trust Services is a state-chartered non-depository Trust Company based in Portland, Maine." This is not correct.

27.     Apache has reviewed the list of state chartered financial institutions regulated by the Maine Bureau of Financial Institutions to evaluate RTS's unsubstantiated assertion that it is a bank and to determine whether RTS is a registered non-depository trust company authorized to do business in Maine. It is not, and it is not. A different company called "Ram Trust Company" (not RTS) is listed as a state chartered financial institution regulated by the Maine Bureau of Financial Institutions. RTS is not listed as a state chartered financial institution, is not listed as a registered non-depository trust company, and is not listed as a bank authorized to do business in Maine.

28.     A 2009 Annual Report from the superintendent of the Bureau of Financial Institutions to the Legislature of Maine lists Ram Trust Company (but not RTS) as a registered non-depository trust company.  RTS, however, is not listed as a registered non-depository trust company.  As the report from the Maine Bureau of Financial Institutions and the Maine Bureau of Financial Institutions website clearly indicate, Ram Trust Company, but not RTS, is a supervised institution under the laws of the State of Maine.  This distinction is important, since the definition of "bank" upon which RTS relies under the Exchange Act only applies to a banking institution "doing business under the laws of any State or of the United States, a substantial portion of the business of which consists of receiving deposits or exercising fiduciary powers ... and which is supervised and examined by State or Federal authority having supervision over banks or savings associations ..."  RTS is not a banking institution that is supervised by the applicable state authority.  As a result, RTS cannot claim to be a "bank" for the purposes of Rule 14a-8.

### RTS Is an Investment Adviser

29.     In contrast to statements in its December 13 letter, RTS is an investment advisor, and as such, cannot provide valid proof of ownership under Rule 14a-8.  On March 15, 2005, RTS and certain of its investment advisers signed a Consent Agreement with the State of Maine Office of Securities in which RTS agreed that "Ram Trust Services Inc. [RTS] an investment adviser company with a principal place of business at 45 Exchange Street, Portland, Maine, 04101" will "comply with all licensing and other legal requirements governing persons acting as investment advisers and investment adviser representatives in the State of Maine."  The Consent Agreement makes clear that RTS is "an investment adviser company."

30.     On its website, RTS says that it "provides superior, highly personalized and fully integrated financial services primarily to high net worth families, individuals and private foundations," that "Unlike many investment managers, Ram Trust Services is never content to rely solely on outside sources of information in assessing our investments," and refers to itself as "investment advisors who invest in tandem with our clients." While Ram Trust calls itself "investment managers" and "investment advisors" on its website, it does not anywhere call itself a "bank" or "broker."

31.     In addition, in July 2002, October 2003, December 2005, November 2006, and in May 2007, RTS submitted investment adviser audit Form ADV-E to the SEC, as registered investment advisers are required to do under the Investment Advisers Act of 1940. RTS informed the SEC that "as members of management of Ram Trust Services, Inc. (the Company), we are responsible for complying with the requirements of Rule 204-2(b), *Books and Records to be Maintained by Investment Advisers*, and Rule 206(4)-2, *Custody or Possession of Funds or Securities of Clients*, of the Investment Advisers Act of 1940 (the Act)." RTS's multiple submissions to the SEC make clear that it is an investment adviser. RTS never submitted banking audit statements to the SEC, never registered as a bank with the State of Maine, and is not a recognized bank or broker under any state or federal law. RTS has only registered and operated as an investment adviser.

32.     SEC staff Legal Bulletin 14 states that a written statement from a stockholder's investment adviser is insufficient evidence of ownership unless the investment adviser is also the record holder of the shares. As SEC staff Legal Bulletin No. 14 (July 13, 2001), Section C.1.c.1 explains:

> **Does a written statement from the shareholder's investment adviser verifying**
> **that the shareholder held the securities continuously for at least one year**

**before submitting the proposal demonstrate sufficiently continuous ownership of the securities?**

The written statement must be from the record holder of the shareholder's securities, which is usually a broker or bank. Therefore, unless the investment adviser is also the record holder, the statement would be insufficient under the rule.

33.     RTS is not a broker or bank and is not the record holder of Apache shares, and thus its purported proof of ownership is insufficient under the rule.

The Proposal May be Excluded
<u>In Accordance with Binding Decisions of this Federal District Court</u>

34.     Two decisions of this federal district court, *KBR v. Chevedden* and *Apache Corp. v. Chevedden,* dictate that Apache is entitled to exclude Chevedden's proposal from its proxy materials.  In *KBR v. Chevedden*, 2011 U.S. Dist. LEXIS 36431 (S.D. Tex. Apr. 4, 2011) (Rosenthal, J.) this federal district court ruled that RTS could not validate the ownership of Chevedden in connection with a proposal that he submitted to KBR in 2010.  The Court reached this decision in part because RTS was not a registered broker dealer or a DTC participant. Specifically, and as is still the case, RTS was not registered with FINRA, SIPC, or the SEC as a broker, but was rather registered as an investment adviser under Maine law, and its website advertised itself as such.

35.     In *Apache Corp. v. Chevedden*, 696 F.Supp.2d 723 (S.D. Tex. 2010) (Rosenthal, J.), this Court explicitly rejected an interpretation that the phrase "record holder is usually a bank or broker" meant that letters from RTS describing itself as an introducing broker were sufficient proof of ownership.  The *Apache* court rejected this argument on the basis that it "would require companies to accept any letter purporting to come from an introducing broker, that names a DTC participating member with a position in the company, regardless of whether the broker was registered or the letter raised questions" as to proof of ownership. *See id.* at 739. ("The only

issue before this court is whether the earlier letters from RTS—an unregistered entity that is not a DTC participant—were sufficient to prove eligibility under Rule 14a-8(b)(2), particularly when the company has identified grounds for believing that the proof of eligibility is unreliable. This court concludes that the December 2009 RTS letters are not sufficient."). The *Apache* court found that such an interpretation would reduce the requirement to simply provide a letter from "a self-described introducing broker." *Id.* Thus, the court rejected the RTS letter as sufficient proof of ownership. The court in the *KBR* case reached the same conclusion. The same issues about RTS's status as a self-proclaimed broker or bank exist here. As was the case in those rulings, all the evidence indicates that RTS is not a broker or a bank.

36.     The *KBR* and *Apache* decisions are binding on Chevedden.

37.     As is the case again here, the only timely purported "proof" of individual ownership of Apache shares that Chevedden provided in the 2010 *Apache v. Chevedden* case was a letter from his investment adviser RTS. Chevedden provided no proof of ownership from a broker or bank—but incorrectly claimed that RTS was a non-depository trust company regulated by the Maine Bureau of Financial Institutions. In *Apache v. Chevedden,* Judge Rosenthal considered the evidence regarding RTS's purported status as a broker in light of the publicly available information about RTS's status as an investment advisor, and Judge Rosenthal explained that "The nature of RTS's corporate structure, including whether RTS is or is not an 'investment adviser' is not determinative of eligibility.  But the inconsistency between the publicly available information about RTS and the statement in the letter that RTS is a 'broker' underscores the inadequacy of the RTS letter, standing alone, to show Chevedden's eligibility under Rule 14a-8(b)(2)." *Apache v. Chevedden*, 696 F.Supp.2d at 740.  Judge Rosenthal noted that "here, there are valid reasons to believe the letter is unreliable as evidence of the

shareholder's eligibility." *Id.*  The November 30, 2011 letter that Chevedden submitted from RTS this year suffers from the same "inconsistency," "inadequacy," and "unreliable" nature as the RTS letter at issue in the 2010 *Apache v. Chevedden* case.

38.     In light of this Court's decision in *Apache v. Chevedden*, on October 18, 2011, the Securities and Exchange Commission Division of Corporation Finance issued Staff Legal Bulletin No. 14F ("SLB 14F") and, consistent with this federal district court's rulings, explained that "we will take the view going forward that, for Rule 14a-8(b)(2)(i) purposes, only DTC participants should be viewed as 'record' holders of securities that are deposited at DTC." SLB 14F further explains that "if a shareholder's broker or bank is not on DTC's participant list," the shareholder must submit two proof of ownership statements "one from the shareholder's broker or bank confirming the shareholder's ownership, and the other from the DTC participant confirming the broker or bank's ownership."

39.     Chevedden's failure to provide a letter from a broker or bank confirming his ownership is hard to explain as anything other than casting further doubt on Chevedden's already highly suspect claimed status as an Apache shareholder and as further demonstrating his failure to establish his eligibility under Rule 14a-8(b) to submit a proposal.

40.     Whether or not Chevedden truly is a holder of Apache common stock, he has failed to comply with Rule 14a-8(b)(2), he has failed to comply with SLB 14F, he has failed to establish his eligibility to submit a proposal, he timely has been advised of his defects, and he has failed to cure his defects.  Apache is entitled to a declaration that it properly may exclude Chevedden's proposal from Apache's proxy materials in accordance with Rule 14a-8(b) and (f).

IV.

Declaratory Judgment

41.     Apache incorporates the allegations above.

42.     In accordance with 28 U.S.C. § 2201, an actual controversy exists between Apache on the one hand, and Chevedden on the other hand.

43.     Rule 14a-8(b)(1) provides "[i]n order to be eligible to submit a proposal, you must have continuously held at least $2,000 in market value, or 1% of the company's securities entitled to be voted on the proposal at the meeting for at least one year by the date you submit the proposal."

44.     Rule 14a-8(b)(2)(i) provides "if like many shareholders you are not a registered holder ... you must prove your eligibility ... [by submitting] to the company a written statement from the 'record' holder of your securities (usually a broker or bank) verifying" your ownership of company stock.  Neither Chevedden, nor his investment adviser RTS, is a record holder of Apache stock.

45.     SLB 14F provides "if a shareholder's broker or bank is not on DTC's participant list" the shareholder must obtain and submit "two proof of ownership statements verifying that, at the time the proposal was submitted, the required amount of securities were continuously held for at least one year – one from the shareholder's broker or bank confirming the shareholder's ownership, and the other from the DTC participant confirming the broker or bank's ownership." Chevedden never submitted proof of ownership from a broker or bank verifying his individual ownership of Apache stock.

46.     Rule 14a-8(f) provides "[t]he company may exclude your proposal, but only after it has notified you of the problem, and you have failed adequately to correct it."  Apache timely

notified Chevedden of the defect in his proposal.  Chevedden failed to correct it.

47.     Accordingly, Apache seeks, and is entitled to, a declaration that it properly may exclude the proposal from Apache's proxy materials in accordance with Rule 14a-8(b) and (f).

48.     Apache also seeks, and is entitled to, its attorneys' fees and expenses in connection with obtaining this declaratory relief.

V.

Relief Sought

49.     Apache requests that this Court declare that Apache properly may exclude Chevedden's proposal from Apache's proxy materials in accordance with Rule 14a-8(b) and (f) of the Securities and Exchange Act of 1934.  Apache also respectfully requests that it have judgment against Chevedden for costs of court, attorneys' fees and expenses, and such other and further relief to which Apache justly is entitled.

Dated:  January 13, 2012

Respectfully submitted,


 /s/ Geoffrey L. Harrison
Geoffrey L. Harrison
Attorney-in-Charge
Texas State Bar No. 00785947
SD/TX Admissions No. 16690
Chanler A. Langham
Texas State Bar No. 24053314
SD/TX Admissions No. 659756
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, #5100
Houston, TX  77002
Tel.: (713) 651-9366
Fax: (713) 654-6666
E-mail:  gharrison@susmangodfrey.com
E-mail:  clangham@susmangodfrey.com

*Attorneys for Plaintiff Apache Corporation*